The argument is United States v. Wilbourn. Ms. Pollack? Good morning. May it please the court, I'm Elizabeth Pollack with the Federal Defender's Court of the Central District of Illinois, and I'm here on behalf of Anthony Wilbourn. The issue before the court today is whether or not the district court properly imposed a two-level enhancement for obstruction of justice based on Mr. Wilbourn's perceived malingering of his mental condition. We're not disputing the district court's factual findings. After a full hearing, the district court found that he had at least faked part of the condition while he was in custody undergoing his evaluation. The question is, though, is that malingering sufficient for a two-level obstruction enhancement under the guidelines? And this is an issue that is both specific to this case factually, and also it's a first impression question for the court as to whether or not this conduct in general should be the subject of a 3C1.1 enhancement. It's something this court has not ruled on yet. Other circuits, the Fifth Circuit in particular, have found that it is proper for this enhancement to be given when the issue is a person's malingering of a mental state. The defendant's position is that not only should it not apply under 3C1.1 to these types of factual issues, but also in Mr. Wilbourn's case particularly, the district court erred in applying the enhancement. We've said, however, that the defendant can be denied an acceptance of responsibility credit for malingering. That is impressive, yes. So this is just the It is the flip side, although in that particular case, I believe the defendant had perjured himself and also faked on the stand, which is not perjured. Right, but you said you're not contesting the facts here. So you're asking for a legal rule. That's correct. So, I mean, the legal rationale for saying it's okay to dock a defendant's acceptance of responsibility because of faking mental illness. Well, there's a slight factual distinction. I believe in that case the defendant faked on the stand and actually participated in the hearing, and he did not do that in this case. Are you trying to limit Diaz-Gadarama to its facts? Can you say that again, Judge? Are you trying to limit the Diaz-Gadarama case to its facts? Well, I think the facts are important between those two cases, yes. But there are overarching reasons why obstruction should not be given. I mean, taking away acceptance for doing this is, I think, different than awarding obstruction for the affirmative act of doing it. And there are reasons why a person who is faking a mental condition shouldn't be given an obstruction enhancement overall. And I believe in the brief I cited some statistics that somewhere between 40 and 70 percent... Well, how about a reason? Do you have a reason? A reason why it shouldn't be applied? Yeah. Yeah, because there are so many defendants suffer from borderline mental conditions just like this guy. No, no. Yes, but I mean, if the judge concludes that he's faking, he does know his name and so on, then that slows down the process. It slows it down to a certain extent. It does, but mental conditions, they're really questionable in certain cases. And if a judge determines that he's faking, then he's faking. But the effect of giving someone a higher sentence for going through the competency examination process, particularly... No, not for going through the process, for faking. That was the factual finding, right? So why is that such a danger? Because he was diagnosed with antisocial personality disorder, one of the facets of which could  Yes, I know, but if you exaggerate your conditions, that's a form of... Antisocial personality disorder is usually not a mitigating factor. It's not, and so many of the defendants in the federal system suffer from that, which causes them to break the law. That's why they are defendants in the federal system. That is correct. But, you know, so many people suffer from these conditions that if someone is borderline, or if an attorney has a question about a borderline person, that they won't ask for the examination because they'll tell their clients, as I would, hey, you know, if you don't cooperate fully or if something comes back, and who knows if they're correct about the malingering or not in every single case, but it will chill people even going through this process. The same argument, I would think, would have had even more force on a judge's findings of perjury during a trial, and in fact, I would suggest that the psychiatrists who have the opportunity to observe an accused defendant over a period of weeks and months are actually probably going to be much more reliable at finding malingering than the average district judge is in finding perjury on the stand, at least if it's based on demeanor. I don't think that's incorrect, Your Honor. I would agree with that. So if judges are allowed to impose obstruction for perjury on the witness stand, why is this so much worse? It's worse because mental conditions are so prevalent throughout our defendants in the federal system, and getting up on the stand and intentionally telling a lie to a district judge is distinguishable from talking to a psychologist in a prison environment, and that is actually one of the things that's different about this case and which distinguishes Mr. Woodward factually from other people who have received this enhancement, is that, and even under the guideline application notes, it says that making a false statement not under oath, not in front of a judge, is different and is not the type of conduct that is meant to be covered by 3C1.1, and that's outlined in the application notes between 4 and 5. If you commit perjury, if you lie on the stand under oath in front of a district judge, that is one of the particular situations that the enhancement is meant to apply to. If you tell a lie outside of court to someone who is not a judge or a law enforcement agent, then that is not the type of conduct that the enhancement is meant to apply to, and that's where those two things are distinguishable. Right, but I assume it's common practice for defense lawyers to warn their clients before they get up and testify in court that you're risking an obstruction if you lie. I think that's right. I think it's very common for defense attorneys. So the same thing would happen here. You know, I'm going to ask for a competency evaluation, but if you're faking, you're risking obstruction. I mean, I hope, I'd hope that a defense attorney would make that assessment, although frankly under existing Seventh Circuit case law, that hadn't been determined at this point. When his, in 2001, or even recently until now, it hasn't been determined that it could result in an obstruction enhancement. I would hope that a defense attorney would warn them, but in this case, the defense attorney asked for the competency examination at the arraignment. So before he had even had a one-on-one meeting with the guy in a jail, or had tried, I don't to communicate with the client. That's when he moved for the exam. So the guy was sent off for the competency exam within a week of the case even being filed. And within a day of the defense attorney being appointed, did he ask for this competency examination. So I would say, even though it's not of record in this case, I would believe, no, that he didn't warn him in this case. And this is something where Mr. Wilbourn had a- You know, I didn't, I wasn't suggesting that that happened here or should have happened here. I understand the chronology. It's just that you're making a policy argument that this is going to put an undue chill on requests for competency evaluations. Well, and I think if the court- You can get tagged for an obstruction if you malinger or fake it. But I just don't see that because there's an obligation to draw the court's attention to a problem of a defendant's competence if it arises. And if there's malingering or faking, that's on the defendant. That's- What's tough for defense attorneys, I think you've hit the nail on the head with that, is that if you're having trouble communicating with a defendant because they are faking a condition or because you simply haven't had enough time to hammer through what they're telling you or to find out for yourself if they're faking the condition, then in my view, it's common practice for defense attorneys to send individuals out for head checks without really ever getting to know that. And as federal defenders, especially, or a CJA counsel, you can't go out and get your own person to come in and look at that defendant and give you an idea ahead of time, oh, is this a waste of the court's time. Right. So it's not going to affect the defense counsel's obligations to inquire as to competence and to ask for an evaluation in appropriate cases. What it will affect, maybe, is the incidences of faking it. I think what it'll do- If you can get tagged for a two-level adjustment. I think that's right. But I think what it'll do is it'll put defense attorneys in the position of asking for competency examinations at their client's risk because they don't have any other option out of their court obligation. So I see that I have entered my rebuttal time. I'll reserve- Okay. Thank you, Ms. Pollack. Mr. McChesick? McChesick, Your Honor. McChesick? Sorry. May it please the court, my name is John McChesick and I represent the United States Government and I'm here to ask that the court affirm the district court's assessment of the obstruction of justice enhancement. And I think the issue here is what Judge Hamilton mentioned is whether or not the district courts have the ability to sift through what is a legitimate request for a competency examination, which happens all the time, and without obstruction of justice being assessed if the individual comes back and being found to be competent despite the examination having been requested and whether or not this is going to place a chill on the request for that. And I think like the other courts that have addressed this, the 11th Circuit, the Fifth Circuit, who have said that courts have the ability to sift out whether or not an individual is malingering and whether or not it was a fake. Right, but that doesn't happen at the time that competency is questioned and the evaluation is ordered. That occurs later. Correct. Because the judge doesn't have the tools to make that determination at the time that there's cause presented. Correct. And in this case, the judge thought that sufficient cause was presented when the defense attorney said I can't communicate with this person at all, he's not answering my questions. I think he should be evaluated for competency. We don't know how many interchanges he had with that defendant before he made that request. We do know that he filed his written motion as requested by the judge a few days later, so there was certainly time to go back and talk to him, I think six days later. But we don't have a record of what happened during that interim period. I mean, certainly could have had communication with him. So this is how much are you going to trust the district courts to assess when malingering has occurred. And in this case, we're looking at that through the lens of clearly erroneous standard and there is certainly sufficient evidence and also with regard to the second step of that analysis, taking that there was malingering, did the district court appropriately assess the enhancement and our position is that he did. And it's in line with every other court that has ruled on that issue. Does a district judge need to have some kind of expert evidence to support his finding of the malingering? Yes, well, he did in this case. I think that there may be instances where malingering may be proven by other methods, but in this case he had the testimony of Dr. Preston, I believe was her name, and also the evaluation. She was assisted in her evaluation by another. Should that always be required? I mean, wouldn't it be very easy for a judge to make a mistake and think someone who is saying preposterous things must be lying, must be deliberate, or they might just be extremely nutty? Well, I think district judges have the ability to have the individuals examined under those circumstances. I'm just asking whether you think it would be a safeguard to require the district judge, if he's thinking of punishing this person for obstruction of justice, to make sure that a psychiatrist agrees that this person is not so crazy that he didn't know what he was saying. In this particular context, yes, Your Honor. In assessing the obstruction of justice with regard to malingering psychiatric disability, that would be appropriate, certainly. In other contexts where obstruction of justice is assessed, such as perjury, then there's no need for that. But in this context, by definition, you're always going to have an expert witness on the record because there will have been a competency evaluation, right? Yes. In most cases. So the safeguard is there in the statutory scheme. I can't think of any situation where an individual has been evaluated for competency where there isn't an expert involved. If the court has no further questions, then I'll rest on my brief. Okay. Thank you, Mr. McPherson. Ms. Pollack, do you have anything further? I just want to follow up briefly on the standard that we're talking about. I said in the beginning I'm not challenging the fact that the district court found that he was malingering. We're not challenging the results of the psychiatric examination. So although the government loves the clearly erroneous standard, that's actually not what we're asking for in terms of reviewing the application of the guideline itself to the facts at issue. That's a de novo review. And as applied to Mr. Wilborn's case, the obstruction enhancement was inappropriate on the facts that were found by the district court. And that's because, you know, the amount of time that it took, and government says, well, he didn't have any control over that, he didn't expect, he shouldn't have known to expect how long it would take, and that's true, but when you look at the total amount of time that it took to get him from arraignment to trial, it was under seven months, which is actually really quick even if there's no competency evaluation done. He didn't waste judicial resources and time. He didn't object. Sure he did. Well, but there was no trial, and there was no jury impaneled prior to him going in for competency. No, if the whole incompetency thing is a fake, then all of the efforts put into the evaluation were a waste of time, right? I think looking back on it, you could say that he wasted the evaluator's time, but again, under the obstruction application notes, the statements made outside of court to people who are not court personnel are not supposed to be punished as obstruction. And the other cases where obstruction was awarded in cases like this where it's given are you have defendants jumping up during trial, stuffing their shirts down toilets, perjuring themselves on the stand, disrupting the proceedings. I see my time has expired. Are you saying obstruction of justice can never be based on something one has said to a private person? That can't be right, you know, suborning a witness and so on. Well, but again, suborning a witness is specifically enumerated in application note four, which is punishable as obstruction under the definition under the guidelines. So the instances we're talking to a private person do constitute obstruction are specifically outlined. Where it's not outlined is in the application note five, which says statements made outside of court that are not specifically enumerated, those should not apply, and that's the argument here. So we would ask that the enhancement be reversed and the case remanded for resentencing. Thank you. Okay. Thank you very much. And you're a federal defendant, right? Yes, sir. So we thank you for your time.